# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**LORI CRAWFORD,**

      **Plaintiff,**

v.                                            Civil Action 2:18-cv-538
                                                    Magistrate Judge Jolson

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Lori Crawford, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income (SSI) under Title XVI. For the reasons that follow, Plaintiff's statement of errors (Doc. 17) is **OVERRULED**, and judgment is entered in favor of Defendant.

## I. BACKGROUND

### A. Prior Proceedings

Plaintiff applied for SSI on July 31, 2014, alleging disability beginning November 7, 2011, due to numerous physical and mental impairments. (Doc. 12, Tr. 210). An Administrative Law Judge (the "ALJ") held a hearing on December 1, 2016 (Tr. 69–92) after Plaintiff's application was denied initially and upon reconsideration. The ALJ denied benefits in a written decision on August 22, 2017. (Tr. 14–26). That became the final decision of the Commissioner when the Appeals Council denied review. (Tr. 1–7).

Plaintiff filed this action on May 23, 2018 (Doc. 1), and the Commissioner filed the administrative record on August 6, 2018 (Doc. 12). Plaintiff filed a Statement of Specific Errors (Doc. 17) and the Commissioner responded (Doc. 18). No reply was filed.

### B. Relevant Testimony

Plaintiff testified that, at the time of the hearing, she was forty-one years old, five foot six inches tall, and weighed 126 pounds. (Tr. 73). Plaintiff stated that she does not have a permanent residence and, instead, stays with friends. (*Id.*). Plaintiff testified that she finished the ninth grade, but has no further education. (Tr. 74). She testified that she had attempted to earn her GED but was unable to pass the test. (Tr. 74).

Plaintiff testified that she had drug problems in the past, which led to legal troubles, but that she no longer uses drugs. (Tr. 74–75). More specifically, Plaintiff stated that, at the time of the hearing, she has not used illegal drugs for roughly two and a half years. (Tr. 76). She does, however, have a prescription for Xanax. (*Id.*).

The ALJ then asked about Plaintiff's source of income. Plaintiff stated that she has not worked since 2008 and has not tried to work. (Tr. 76–77). She explained that "her benefits are pending right now" because an ex-boyfriend caused damage to one side of her throat, but she accidently threw away the paperwork to receive benefits and she is currently working to remedy the situation. (Tr. 77). Further, Plaintiff stated she receives "food stamps, 194 a month" and she has a "medical card." (*Id.*).

The ALJ asked why Plaintiff filed for disability and what is preventing her from working. Plaintiff responded that she does not like to be around people, that she has anxiety, and suffers from seizures. (*Id.*).

The discussion then turned to Plaintiff's medical treatment. Plaintiff explained she began seeing Dr. Courtney Bonner in 2014 and that she had seen a doctor before that time, whom she identified as Dr. Bob. (Tr. 78–79). Plaintiff indicated that she is currently being treated for

depression, anxiety, and dipolar disorder; and that she is taking Seroquel as well as about ten other medications for allergies, seizures, restless leg syndrome, blood pressure, muscle spasms, and COPD. (Tr. 79, 81, 82, 83). She testified that she had begun having seizures a couple months before the hearing, and once a seizure caused her to fall and split her lip open. (Tr. 80). She stated that she had at least four seizures in the preceding two-month period. (*Id.*). Observers told her that she fell and shook during the episodes. (Tr. 81). Plaintiff explained, however, that she had not had a seizure since she began taking medication for the condition. (*Id.*).

Plaintiff also stated that she has problems with the right side of her neck and dizziness because her ex-boyfriend choked her eight months before the hearing. (Tr. 81–82). She said that she becomes dizzy at times from looking up or laying on her right side for "very long," and suffers from neck pain. (*Id.*).

The ALJ inquired as to Plaintiff's physical abilities. Plaintiff stated her sciatic nerve becomes agitated from sitting too long and that she has spurs on the bottom of her tailbone. (Tr. 83). She also stated that she has osteoporosis and is constantly in pain. (*Id.*). She claimed she can sit for only fifteen or twenty minutes and can be on her feet for no more than an hour. (*Id.*). She is hesitant about her ability to walk long distances or carry anything because she may become fatigued due to COPD and her inability to breathe well. (*Id.*). She stated she can lift a jug of milk and does not have trouble using her hands and arms except that sometimes her left arm feels numb. (Tr. 84). She stated she can go up and down stairs, but can only do ten stairs at a time without having to catch her breath. (*Id*). Lastly, Plaintiff stated she has no problem crouching or kneeling but may have problems getting back up. (*Id.*).

The ALJ asked Plaintiff to describe an average day. Plaintiff stated she sleeps a lot, does not like to go out, eats only if she feels like it, and watches television all day. (Tr. 85). Plaintiff explained she can cook using the stove and oven, and that she takes showers. (*Id.*). Plaintiff goes to Dollar General every day to purchase goods for her basic needs. (*Id.* at 86). Plaintiff stated that she rarely does housework, and her friends take her to medical appointments. (*Id.*). Plaintiff stated she has very limited family and community connections. (Tr. 87). Her daughter lives in Florida and was raised by Plaintiff's mother from the age of five. (*Id.*).

The ALJ inquired as to Plaintiff's reading abilities. Plaintiff stated that although she does not read for pleasure, she can read but has some trouble comprehending large words. (Tr. 88). Plaintiff explained she is able to read and comprehend a newspaper but may have difficulty with some content. (*Id.*). Plaintiff testified that she was in special education classes when she was younger. (*Id.*).

The ALJ asked about Plaintiff's purported difficulty being around people. (*Id.*). Plaintiff explained that she does not like going to grocery stores or going to see her doctor because she feels that people are talking about her. (*Id.*). She is, however, comfortable around her friends and stated "if it's a small area and there's not a lot of people in there I'm fine." (Tr. 89). Finally, Plaintiff said that she does not like to go to Walmart but does like to go to Dollar General because the employees know her. (*Id.*).

The ALJ then questioned the Vocational Expert Dr. Walter Walsh (the "VE"). (*Id.*). The ALJ posed the following hypothetical:

> I want you to assume a hypothetical individual the same age, education, work background as the [Plaintiff]. Individual could perform work at all exertion levels. Work would be limited to simple routine up to moderately complex tasks. Only occasional changes in the work setting with any changes explained and

4

demonstrated. No strict production demands or time deadlines. No interaction with the public and only occasional and superficial interaction with coworkers and supervisors.

(Tr. 90). The VE opined that, given those constraints, work as a cleaner, kitchen helper, and marker would be available to Plaintiff. (*Id.*). The ALJ added an additional limitation to the hypothetical: if the individual were off task more than ten percent of the day in addition to breaks. (Tr. 91). The VE stated that the additional limitation would "compromise competitive work on a sustained basis." (*Id.*).

### C. Relevant Medical Background

Plaintiff asserts five assignments of error, in which her mental and physical health is relevant. The Court summarizes medical evidence pertaining to the same.

Plaintiff received treatment at a "Six Counties," summarized in an Exit/Termination Summary. (Tr. 318–19). Plaintiff was diagnosed with bi-polar disorder with psychotic features, social phobia, and personality disorder. (*Id.*). She was noted to have severe symptoms. (*Id.*). The record states Plaintiff was honest about her past drug and alcohol abuse; and was polite, cooperative, and respectful in her verbalization. (Tr. 319).

Dr. Avneet Hira performed a psychiatric diagnosis assessment of Plaintiff. (Tr. 335–38). The report notes that Plaintiff's appearance matched her stated age, her grooming was causal, her attitude was cooperative and spontaneous, her eye contact was good, no abnormal movements were noted, her gait was steady, her speech was a normal rate and volume, and her mood was anxious. (Tr. 336). She denied suicidal or homicidal thoughts and denied any delusions. (*Id.*). She denied auditory, visual, tactile, or olfactory hallucination. (*Id.*). Her thought process was goal directed, there was no loosening of association, and her attention and concentration were intact.

(*Id.*). Her intelligence was noted as "average," and her insight and judgment as "fair." (*Id.*). Dr. Hira diagnosed Plaintiff with depression, anxiety, and drug dependence. (*Id.*).

Plaintiff receives primary medical care at Muskingum Valley Heath Center, where she was first seen on February 23, 2014. (Tr. 321). Plaintiff presented the following symptoms: difficulty concentrating, feelings of worthlessness/guilt, hopelessness, impaired memory, insomnia, recurrent thoughts or death, weight gain, and weight loss. (Tr. 321). On June 2, 2014, Plaintiff was diagnosed with severe depression, and it was noted that she had a history of seizures. (Tr. 321–22).

Plaintiff was next seen on November 5, 2014, where she again reported depression and was prescribed Cymbalta. (Tr. 331–32). The reports from subsequent visits display consistent symptoms. (*See* Tr. 345). On September 3, 2015, she reported thinking she was having panic attacks and admitted to taking Xanax that she purchased illegally. (Tr. 350). A little over a month later, she was seen again and diagnosed with accelerated hypertension, compression of the thoracic vertebra, and Hepatitis C. (Tr. 357).

Plaintiff was seen by Dr. Bonner on March 31, 2016, presenting that she had been experiencing neck pain for about one month and dizziness when laying on her right side. (Tr. 381). The neck pain was reported at a severity of 5/10 and was described as "moderate." (*Id.*). At a follow-up appointment, the neck pain was said to be "gradually improving," although Plaintiff was assessed as having accelerated hypertension, neck pain, eustachian tube dysfunction, and dizziness. (Tr. 385–86).

At a subsequent appointment on July 7, 2016, Plaintiff reported a cough. (Tr. 388). It was noted that her "past medical history is significant for COPD." (*Id.*). The report from this visit

6

indicates that Plaintiff was not experiencing depression. (*Id.*). Plaintiff was assessed as having panlobular emphysema, claudication, chronic bilateral low back pain with bilateral sciatica, and bronchopneumonia. (Tr. 389). A letter from Dr. Bonner at Muskingum Valley Health Center, dated November 21, 2016, offers an opinion that Plaintiff is disabled due to physical and mental limitations and thus unemployable. (Tr. 391).

Psychologist Floyd Sours, MA, assessed Plaintiff for a disability purposes on November 12, 2014. (Tr. 339–44). In the interview, Plaintiff knew her age, social security number, four recent Presidents, and she could answer questions about the content of a two-paragraph reading test. (Tr. 342–43). This led Mr. Sours to conclude that Plaintiff "would have the ability to understand, remember and carry out instructions in a work setting." (Tr. 343). He further concluded that Plaintiff would "have some limitations on her ability to attend and concentrate as she persists and paces herself in the pursuit of simple, repetitive tasks, as well as multi-step tasks in a work setting." (*Id.*). Mr. Sours additionally assessed that Plaintiff "would have limitations maintaining appropriate behavior in a work setting" as she relates to supervisors and co-workers, and also while under pressure in a work setting. (*Id.*).

### D. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 12, 2014, the date of the application. (Tr. 16). The ALJ found that Plaintiff had the following severe impairments: depressive disorder; bipolar disorder; and anxiety disorder. (Tr. 16). The ALJ held, however, that there was no medical opinion of record to indicate the existence of an impairment or combination of impairments that met or equaled in severity the level of the Listings of

Impairments. (Tr. 17).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)). In other words, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## III. DISCUSSION

Plaintiff asserts five assignments of error: (1) the ALJ's conclusion that Plaintiff could

engage in substantial gainful activity is not supported by substantial evidence; (2) the assessment by the ALJ of Plaintiff's residual functional capacity ("RFC") is not supported by substantial evidence; (3) the ALJ erred in basing her decision upon the opinion of a vocational expert which was in response to a hypothetical question that failed to set forth accurately all of Plaintiff's impairments; (4) the ALJ erred in giving great weight to the opinions of the state agency's psychological consultants and the consultative examiner; and (5) the ALJ erred in finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not consistent with the medical evidence. (Doc. 17 at 1–2).

Plaintiff's briefing is not organized by the assignments of error, and, at times, it is difficult to identify which assignment of error the brief is discussing. (*See generally id.*). The Court finds it appropriate to merge the discussion of Plaintiff's second, third, and fifth assignments of error together because, as explained below, these three assignments relate to the RFC. (*See* Doc. 17 at 10–11). In this fashion, the Court considers each assignment in turn.

### A. The ALJ's Conclusion that Plaintiff Could Engage in Substantial Gainful Activity

Plaintiff argues that the "ALJ's conclusion that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform is not supported by substantial evidence." (Doc. 17 at 7). However, beyond this conclusory sentence, Plaintiff's briefing fails to put forth any further argument that the ALJ's conclusion that Plaintiff could engage in substantial gainful activity is not supported by the evidence. (*See generally* Doc. 17). This challenge, therefore "warrants little discussion, as [Plaintiff] has made little effort to develop this argument in her brief . . . or to identify any specific aspects of the Commissioner's determination that lack support in the record." *Hollon*

9

*v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006). The Court declines to formulate arguments on Plaintiff's behalf, "or to undertake an open-ended review of the entirety of the administrative record" and, instead, limits its "consideration to the particular points that [Plaintiff] appears to raise in her brief." (*Id.*). This assignment of error, therefore, is overruled. Moreover, the Court finds this imprecise assignment of error is addressed by one or more of the others considered below.

Moreover, even if Plaintiff had adequately presented this assignment of error, it would fail on the merits because the ALJ's conclusion is supported by substantial evidence. Plaintiff argues "[t]he records in this case is replete with evidence of Plaintiff's severe symptoms form her multiple mental health impairments." (Doc. 17 at 10). This is not the standard. A court must decide only if there was substantial evidence to support the ALJ's decision. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 400 (6th Cir. 2018). If so, the court must defer to that decision "even in the face of substantial evidence supporting the opposite conclusion." *Id.* The ALJ relied on Plaintiff's testimony and medical evidence in finding the severity of Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." (Tr. 17). The ALJ cited the following:

- The field office interviewer's notes that Plaintiff was alert and oriented during her interview.

- Mr. Sours examining notes stating Plaintiff's memory functioning and reading comprehension were at least marginal, and her intellectual functioning was in the borderline category.

- Dr. Hira's treatment notes stating Plaintiff's memory was intact, her intelligence and fund of knowledge were average, and her insight fair. Dr. Hira's notes that Plaintiff was cooperative, and her eye contact was fair.

- Dr. Hira's treatment notes that Plaintiff's attention and concentration were intact.

10

- Plaintiff's testimony that she could read, had problems with big words, but understood what she read in a newspaper except what was going on with elections.

- Plaintiff's testimony she was comfortable with her cohabitants.

(Tr. 17–18). Accordingly, the ALJ's conclusion is supported by substantial evidence. Even if Plaintiff had cited evidence establishing an opposite conclusion, the Court is required to defer to the ALJ's decision even in the face of substantial evidence supporting an opposite conclusion. *Mokbel-Aljahmi*, 732 F. App'x at 400. Adequate presentment, therefore, would not have altered the Court's conclusion as to this assignment of error.

### B. The ALJ's RFC Determination

Plaintiff's second assignment or error asserts that the assessment of Plaintiff's RFC is not supported by substantial evidence. Plaintiff also argues (presumably in support of her third assignment of error) that the "first hypothetical question does not accurately set forth Plaintiff's limitations[]" because the ALJ "understated the Plaintiff's mental limitations" and "completely ignored her physical limitations stemming from her neck and back problems." (Doc. 17 at 11). Plaintiff further claims that, when asked the second hypothetical that included the individual being off task for more than ten percent of the day, the VE stated that limitation would compromise competitive work on a sustained basis. (Doc. 17 at 11). Plaintiff contends that substantial evidence "supports a finding that Plaintiff would be off task more than ten percent of the time, thereby rendering her unable to engage in substantial gainful activity." (*Id.*). As the Commissioner notes (Doc. 18 at 8) and the Court agrees, this argument is essentially a challenge to the ALJ's RFC finding. Plaintiff similarly argues (presumably in support of her fifth assignment of error) that the ALJ erred in finding "Plaintiff's statements concerning the intensity, persistence, and limiting

effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record." (Doc. 17 at 9–10). Based on this, the Court concludes that Plaintiff's fifth assignment of error is likewise a challenge to the ALJ's RFC finding. Accordingly, the three assignments will be considered together and resolved by answering the question of whether the ALJ's RFC determination is supported by substantial evidence.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's following testimony:

> The claimant represented that bipolar, depression, and anxiety limit her ability to work. She reported that she could not be around people for lengthy periods of time. At the hearing, she reiterated that she does not like to be around people. Going to the grocery store and going to see one of her doctors causes anxiety. She prefers smaller stores like Dollar General as opposed to Walmart. She takes Seroquel and her medical provider ordered two new medications. As to her daily activities, she watches television all day. She is able to shower as well as use an oven. She does not do yard work.

(Tr. 19) (internal citations to the record omitted). The ALJ also considered the fact that mental health services were terminated in March of 2014 because Plaintiff did not return, and, at that time, her overall progress in treatment was shown as "improved." (Tr. 19). *See also* 20 C.F.R. 416.929(c)(3)(v) (a claimant's treatment is a relevant factor for an ALJ to consider when assessing severity and nature of symptoms). The ALJ noted that Plaintiff resumed treatment in June of 2014, reporting depression and anxiety. (Tr. 19). One month later, despite reporting some anxiety, mental status findings were generally normal, including intact attention and concentration and intact recent and remote memory. (Tr. 19–20). By September of 2014, Plaintiff reported feeling better but wanted something to help with anxiety because smoking marijuana was not working anymore. (Tr. 20). Two months later, in November 2014, Plaintiff's mental status findings were essentially normal except for stressed mood and restricted affect. (Tr. 20). Subsequent psychiatric

12

findings were generally normal or negative with no depressed mood and normal mood and affect. (Tr. 20, *see, e.g.*, 369–70, 375–76, 388–89).

The ALJ relied on the opinions of Psychologist Sours and Drs. Douglass and Johnston to determine Plaintiff's persistence, pace, and the limiting effects of Plaintiff's symptoms. Psychologist Sours opined that Plaintiff was able to understand, remember and carryout instructions; had some limitations in her ability to attend and concentrate as she persists and paces herself in pursuit of simple, repetitive tasks, as well as multi-step tasks in a work setting; had limitations in appropriately interacting with supervisors and co-workers; and had limitations in handling work pressure. (Tr. 20, 342–44). Drs. Douglass and Johnston opined that Plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence or pace; and no episodes of decompensation, each of extended duration. (Tr. 122, 136).

Plaintiff argues that "the psychiatric diagnostic assessment by treating psychiatrist, Dr. Avneet Hira, indicated that she had depression and anxiety" which would "support a finding that [Plaintiff] has a marked limitations in her ability to maintain attention, concentration, persistence, and pace." (Doc. 17 at 10). However, this diagnosis does not upset the ALJ's RFC. The ALJ also cited Dr. Hira's notes establishing that Plaintiff's memory function, and reading comprehension were at least normal; her intellectual functioning was in the boarderline category; and she was cooperative and her eye contact was fair. (Tr. 17). The ALJ further cited Dr. Hira's notes indicating that Plaintiff's heroin addiction and cocaine dependence were in remission. (Tr. 17). The ALJ, therefore, did not ignore Dr. Hira's reports. And, more importantly, the ALJ did not err and, instead, weighed the medical evidence as required.

13

Additionally, even if the record contains evidence that may support Plaintiff's argument, the ALJ's findings are "not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Mixon v. Comm'r of Soc. Sec.*, 12 F. Supp. 3d 1052, 1064 (S.D. Ohio 2013) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1996)). Rather, it is the ALJ's "function to resolve conflicts in the evidence," *See Hardaway v. Sec'y of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987), and that is exactly what the ALJ did here. The limitations set forth in the ALJ's hypothetical question were based upon substantial evidence including Plaintiff's testimony, Plaintiff's medical records, and the professional medical opinions.

While Plaintiff's statement of errors opines that the "severity of her functional limitations as described in her testimony are supported by the assessments of her treating physicians [and] evidence in the record over a period of years," (Doc. 17 at 10), this is not the standard. On review, it is not for a court to decide if there was evidence in favor of the plaintiff's position. *Mokbel-Aljahmi*, 732 F. App'x at 400. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* (quoting *Blakely*, 581 F.3d at 406 (further quotations omitted)). Instead, a court must decide only if there was substantial evidence to support the ALJ's decision. *Id.* If so, the court must defer to that decision "even in the face of substantial evidence supporting the opposite conclusion." *Id.* (citations omitted). It is, therefore, immaterial whether the record contained substantial evidence to support a different conclusion. *Mixon*, 12 F. Supp. 3d at 1064. The ALJ's RFC determination was supported by substantial evidence including Plaintiff's mental status examination findings, Plaintiff's treatment records, and subsequent psychiatric findings in

formulating Plaintiff's RFC. Accordingly, the ALJ was well within her discretion in crafting Plaintiff's RFC, and it rests on substantial evidence.

### C. Weight Given to Consultative Examiner Floyd Sours and the State Psychological Consultants

1. Psychologist Floyd Sours

Plaintiff argues that Mr. Sours' "evaluation should have been given little weight as it is inconsistent with the medical evidence as a whole, including the assessments by Plaintiff's treating physicians." (Doc. 17 at 10). However, the ALJ's function is to resolve discrepancies in the medical evidence. *See* 20 C.F.R. § 404.1527(c)(4) ("When we consider how much weight to give to a medical opinion, we also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion."). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App's 149, 157 (6th Cir. 2009).

The ALJ extensively discussed Mr. Sours' report. (Tr. 20–21, 339–44). Mr. Sours noted that Plaintiff was neat, clean, and her dress was appropriate. (*Id.*). He further noted she was serious, cooperative and rambled some but was easily understood. (Tr. 20, 341). Plaintiff exhibited a minimal range of emotion and admitted to being depressed but had no suicidal thoughts. (Tr. 20, 341). Plaintiff also reported getting anxious every other day, having a panic attack within the last two weeks, and experiencing social anxiety. (Tr. 20, 341). Plaintiff was oriented, relevant, coherent and alert throughout the interview. (*Id.*). She had intact and at least marginal memory function, reading comprehension, insight, and judgment. (Tr. 20, 341–42). Mr. Sours opined that Plaintiff was able to understand, remember and carryout instructions; had some

15

limitations in her ability to attend and concentrate as she persists and paces herself in pursuit of simple, repetitive tasks, as well as multi-step tasks in a work setting; had limitations in appropriately interacting with supervisors and co-workers; and had limitations in handling work pressure. (Tr. 20, 342–44).

In giving Mr. Sours' opinion great weight, the ALJ noted that he was an examining consultant (Tr. 21). *See* 20 C.F.R. § 416.927(c)(4) (generally, more weight is given to the opinion of a source who has examined the claimant). The ALJ also found that Psychologist Sours' opinion was consistent with the overall record evidence. (Tr. 21). *See* 20 C.F.R. § 416.927(c)(4) (ALJ may properly consider consistency with the record when weighing medical opinions).

Plaintiff insists that "while [Sours] opined that Plaintiff would have some limitations on her ability to attend and concentrate as she paces herself in the pursuit of simple, repetitive tasks as well as multi-step tasks in a work setting, he did not express his opinions in vocationally significant terms, i.e. whether her limitations were moderate or marked." (Doc. 17 at 10). Plaintiff, however, fails to cite any authority supporting this argument, and the Court is unpersuaded. Accordingly, the ALJ did not err.

2. <u>Non-examining State Agency Consultants</u>

Next, Plaintiff's Statement of Errors argues that "the opinions of the non-examining state agency consultants should have been given little weight." (Doc. 17 at 11). Plaintiff offers only this bare assertion with no supporting argument or citations. This challenge, therefore "warrants little discussion, as [Plaintiff] has made little effort to develop this argument in her brief . . . or to identify any specific aspects of the Commissioner's determination that lack support in the record." *Hollon*, 447 F.3d at 490–91. Again, the Court declines to formulate arguments on Plaintiff's

behalf, "or to undertake an open-ended review of the entirety of the administrative record" and, instead, limits its "consideration to the particular points that [Plaintiff] appears to raise in her brief." *Id*.

Moreover, the ALJ's weighing of the state psychologists' opinions is supported by substantial evidence. The ALJ considered the opinions of the state agency psychologists, Bruce Douglass, Ph.D., and Irma Johnston, Psy.D., who reviewed the evidence and made specific assessments of Plaintiff's functional abilities. (Tr. 20, *see* Tr. 122–26, 136–40). *See* 20 C.F.R. §§ 416.929(c)(1), (c)(3) (authorizing an ALJ to consider statements from non-treating sources about how symptoms affect a claimant); 20 C.F.R. § 416.927(e)(2)(i) (an ALJ may properly rely on the opinions of state agency reviewing experts because they are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). The ALJ determined that these opinions were entitled to great weight because they were consistent with the record evidence as a whole. (Tr. 20). *See* 20 C.F.R. § 416.927(c)(4) (an ALJ properly considers consistency when weighing medical opinions). Drs. Douglass' and Johnston's opinions indicated that Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and no episodes of decompensation, each of extended duration. (Tr. 122, 136). They opined that Plaintiff could handle one-to-three tasks that were simple to moderately complex and routine in nature; retained the ability to perform routine, two-step tasks on a sustained basis; could perform work in a setting free of strict production demands and time deadlines; and could work in a non-public environment involving occasional, superficial interactions with others. (Tr. 124–26, 138–40). Dr. Douglass also opined that Plaintiff could manage routine changes that could be explained. (Tr. 125). This assignment

17

of error is overruled because Plaintiff did not develop her argument in the briefing and, even if she had, the state psychologists' opinions are consistent with the record and granting them great weight was well within the ALJ's discretion.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Statement of Errors (Doc. 17) is **OVERRULED**, and judgment is entered in favor of Defendant.

IT IS SO ORDERED.


Date: April 8, 2019                               /s/ Kimberly A. Jolson
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE